IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Mark Boyed,                                                  Case No. 3:16CV2609

        Plaintiff,

        v.                                                 **ORDER**

Dana Incorporated, et al.,

        Defendant.

This is a suit under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*, and O.R.C. § 4112.01, *et seq*.

Defendant Management Registry Inc. and Malone Staffing Georgia, LLC (jointly, MRI) are temporary staffing agencies that provided employees, including plaintiff Mark Boyed, to defendant Dana Driveshaft Manufacturing (misnamed Dana Incorporated) (Dana). Defendant Donathan was plaintiff's supervisor at Dana. Defendant Bailey is an employee of MRI.

Plaintiff, who is bipolar and schizophrenic, claims that the defendants failed to inform him of his rights under the FMLA and interfered with his exercise of those rights.

Dana has filed a motion to dismiss the FMLA claim against it, and thereon, to decline to exercise supplemental jurisdiction over plaintiff's state law claims, as to which there is no diversity of citizenship. (Doc. 11).

For the reasons that follow, I grant Dana's motion.

**Background**

Due to his mental illness, plaintiff from time to time needed to obtain medial treatment, often without much warning. He never made a formal FMLA request. About six months before the events giving rise to this suit, a Dana lead supervisor, Mr. Clayton, had told the plaintiff that if he ever had an issue about attending a medical appointment simply to go to the appointment. According to plaintiff, Clayton had said, "just tell whoever had the issue that Clayton said it was approved."

Though plaintiff alleges that both Dana and MRI were aware of his illness, plaintiff first told Donathan about his condition on May 20, 2015. After he made that disclosure, Donathan's attitude toward plaintiff visibly changed; their relationship, which had been friendly, was no longer so.

Due to the effect on his mental state of Donathan's changed attitude, plaintiff wanted to seek medical treatment. The earliest available appointment was June 5, 2015, at 6:15 p.m. On June 1st plaintiff asked his supervisor at MRI, defendant Chad Bailey, for approval to work on June 5th from 3:00pm-5:30pm, and return at 7:00pm to finish the shift. Bailey indicated that he had to obtain final approval from Donathan.

On June 4th, Bailey told plaintiff he had spoken with Donathan, and was not able to approve plaintiff's request to go to the appointment. If plaintiff went any way, Bailey said, he'd lose his job at Dana. Plaintiff told Bailey how important the appointment was. He also told him about lead supervisor Clayton's statement to him six months earlier to go to his appointments if he needed to do so. Plaintiff assumed he'd be covered during his absence on June 5th.

On June 5th, plaintiff arrived early for his shift at 2:15pm. Before he could begin, a Dana guard stopped him and escorted him to a room. Bailey entered and told plaintiff his assignment at

Dana was ending. According to Bailey, Donathan decided to terminate the assignment for "attitude" and "low productivity."

Plaintiff claims disability discrimination under O.R.C. § 4112.01, *et seq.*, as to all defendants, aiding and abetting disability discrimination against Donathan and Bailey, and interference with his rights under the FMLA, due to the failure to notify him of those rights, against all defendants.

## Discussion

The gravamen of Dana's motion is that it, despite its employment of plaintiff, had no obligation under the FMLA to advise him of his FMLA rights or to grant him FMLA leave. That obligation rested, instead, Dana argues, solely with MRI.

The basis for this contention is that Dana, although it might have been plaintiff's "joint employer," along with MRI, for purposes of the FMLA, *see* 29 C.F.R. § § 825.106(b)(1), Dana was his "secondary employer." As such, it had no obligation to advise the plaintiff of his FMLA rights. That duty, Dana contends, belonged to MRI alone because MRI was plaintiff's "primary employer." *See* 29 C.F.R. § 825.106(c) ("only the primary employer is responsible for giving required notices to its employees, . . . .").

The FMLA regulations provide guidance for differentiating between a "primary employer" and a "secondary employer:"

> Factors considered in determining which is the primary employer include authority/responsibility to hire and fire, assign/place the employee, make payroll, and provide employment benefits. For employees of temporary placement agencies, for example, the placement agency most commonly would be the primary employer.

29 C.F.R. § 825.106(c).

3

On its face, this regulation substantially answers the question:

- MRI had the authority to hire and fire the plaintiff: thus it was Bailey who warned plaintiff he'd lose his job at Dana if he went to the appointment, just as it was Bailey who told him he was terminated from Dana;

- MRI assigned plaintiff to Dana; and

- MRI paid plaintiff his earnings.[1]

The complaint's profile of MRI's relationship to plaintiff and Dana substantially matches the attributes of a primary employer. That, according to § 825.106 (c), an employment agency "most commonly would be the primary employer" adds conclusive weight to the result reached *via* that section's factors: namely, that MRI was the primary, and Dana the secondary, employer.

To be sure, Donathan's response to plaintiff's having gone to his appointment led to his termination from Dana. But the complaint does not allege that he had "authority/responsibility" to terminate his relationship with MRI. Here, Bailey, not Donathan or someone else from Dana, gave plaintiff the notice he was fired from Dana.

The few cases interpreting § 825.106(c) support the conclusion that MRI was plaintiff's primary employer.

Most importantly, the Sixth Circuit has emphasized the significance of the authority to hire and fire in determining which of two joint employers is primary for FMLA purposes. In *Grace v. USCAR*, 521 F.3d 655, 668 (6th Cir.2008), the plaintiff, a long-term temp worker, notified the agency, rather than her workplace employer, of her need for FMLA leave. Although *Grace* involved the triggering of FMLA rights *via* a request for FMLA leave, its discussion of the § 825.106(c) factors is directly on point.

---

[1] The complaint does not indicate anything about employee benefits.

4

Italicizing the phrase in § 825.106(c) that "*the placement agency most commonly would be the primary employer*," the court gave primary weight to the fact that the agency "alone has the ultimate ability to hire and fire" the employee." *Id*. at 668. This was so, the court stated, because "[e]ven after [the workplace employer] made the decision to terminate her position, [plaintiff] was still an employee of [the temp agency]." *Id*.

Moreover, although in *Grace*, as here, the workplace employer "undoubtedly controlled [plaintiff's] day-to-day activities," the determinative fact was that the temp agency "had the sole ability to assign her to another employer." *Id*. The court also noted the agency, like MRI here, "occupies the important legal position of being the entity in charge of her payroll and benefits." *Id.*

In light of its analysis of the application of the § 825.106 (c) factors, the court concluded, "we believe that the default rule, which designates the staffing agency . . . as the primary employer, is applicable." *Id.*

The court in *Mahoney v. Nokia, Inc.*, 444 F. Supp. 2d 1246 (M.D. Fla. 2006), granted summary judgment in favor of the workplace employer in an FMLA notice case. The temp agency, which the court found to have been the primary employer, had placed the plaintiff with his workplace employer, Nokia. Nokia became, as Dana did here, unhappy with the plaintiff's performance. After it reported its displeasure to the temp agency, the agency terminated his assignment to Nokia.

As did the Sixth Circuit in *Grace*, the court in *Mahoney* gave primary weight to the fact that the temp agency "made the decision to send Mahoney to Nokia without input from Nokia." *Id.* at 1255. What happened thereafter was, in the court's view, less significant:

> [t]he fact that Nokia employees trained, supervised and instructed Mahoney does not necessarily indicate that Nokia was his primary employer. As an employee leasing service, Spherion would not be in a position to engage in those tasks, and it follows

5

>that employees of the company to whom a leased employee was assigned would be the ones to instruct that leased employee on the functions of the particular job position at issue. The fact that Nokia employees told Mahoney how to do his job does not conclusively demonstrate that Nokia was Mahoney's primary employer.

*Id.* at 1255.

In response to defendant's motion to dismiss, the plaintiff contends that Dana assumed responsibility for providing notice to the plaintiff of his FMLA rights in the "Limited Corporate Account Agreement" that Dana and MRI signed.[2] Plaintiff points specifically to the following terms of that agreement:

- Purchasers will be responsible for the acts and omissions of Supplier's employees;

- Dana will comply with all applicable laws, regulations, and orders, including, but not limited to, equal opportunity employment laws and regulations and occupational safety and health legislation;

- Dana will control the details of the work and be responsible for the work product of Supplier's employees assigned to perform professional…services, or similar work.

Plaintiff argues that the agreement, and, in particular, these terms alone, distinguish this case from *Mahoney*. I disagree.

First: as *Grace, supra,* makes clear, that Donathan or others at Dana, as the agreement provided, determined where and when plaintiff would work does not require a finding that Dana was plaintiff's primary employer. It would be entirely counter-intuitive, and, in practice, unmanageable, for a temp agency to be in control of its employer-customer's day-to-day assignment of tasks and hours.

---

[2] Dana refers to a "Temporary Help Supply Agreement," rather than a "Limited Corporate Account Agreement." From the context of the parties' discussion of the terms, it appears they are referring to the same document.

Second, Dana points out that the language in the agreement making it responsible for the acts of MRI's employees while on Dana's premises references only situations in which, in the absence of Dana supervisory personnel, the temp employees would be, without other internal controls and safeguards, handling cash and other valuables, or working on Payroll service. This provision makes Dana, not MRI, responsible for defalcations by MRI employees that Dana's lack of oversight facilitated. It is limited in scope and has nothing to do with Dana's alleged, but not actual, status as plaintiff's primary employer. Indeed, the provision contemplates circumstances where Dana was not providing oversight.

Finally, Dana's commitment to comply with all applicable laws and regulations, including, but not limited to equal-opportunity laws and regulations, does not mean that Dana assumed the responsibility for informing its MRI-provided temporary employees of their FMLA rights. Instead, as Dana contends, any commitment embraced within this provision would kick in only if Dana had a legal obligation to give the FMLA notice. No such commitment exists under the FMLA unless Dana is the primary employer.

Which I conclude it was not.

## Conclusion

In light of *Grace, supra*, the law in our Circuit appears clear that in situations like the one the plaintiff's complaint describes, the duty to give notice about FMLA rights falls on temporary employment agencies.

In addition, I agree with the defendant that I should also dismiss the supplemental state-law claims, without prejudice.

It is, accordingly,

7

ORDERED THAT:

1. Dana's motion to dismiss the plaintiff's federal claim as to it (Doc. 11) be, and the same hereby is granted;

2. Dana's motion to dismiss the supplemental state law claims against it be, and the same hereby is granted, without prejudice;

3. Dana's motion for a fourteen-day extension of time to file an answer to defendant MRI's cross-claim (Doc. 16) be, and the same hereby is, granted. Answer due on or before April 13, 2017; and

4. The clerk shall forthwith set this case for a telephonic status/scheduling conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge