# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Mark Boyed,　　　　　　　　　　　　　　　　Case No. 3:16CV2609

　　　　　　Plaintiff

　　v.　　　　　　　　　　　　　　　　　　　ORDER

Dana Incorporated, et al.,

　　　　　　Defendants

This is a suit under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*, and O.R.C. § 4112.01, *et seq.*

Plaintiff Mark Boyed alleged that defendants Dana Driveshift Manufacturing (mistakenly identified in the complaint as Dana Incorporated), John Donathan, Management Registry Incorporated, Malone Staffing Georgia, LLC, and Chad Bailey: 1) discriminated against him on the basis of disability, in violation of Ohio law; and 2) failed to inform him of, and interfered with his exercise of, his FMLA rights. (Doc. 1).

In a prior decision, I dismissed the FMLA claim against Dana and Donathan (a Dana supervisor) with prejudice after finding that Dana was Boyed's "secondary employer," in which case it had no obligation to notify Boyed of his FMLA rights. *Boyed v. Dana Inc.*, 2017 WL 1179058, *2–4 (N.D. Ohio).

I then declined to exercise supplemental jurisdiction over the state-law claims against Dana and Donathan and dismissed them without prejudice. *Id.* at *4.

Pending is Dana's motion under Fed. R. Civ. P. 12(b)(6) to dismiss the crossclaim of Management Registry Incorporated and Malone Staffing (collectively, MRI). (Doc. 21).

For the following reasons, I grant the motion.

## Background

### A. The Contract

MRI is a temporary staffing agency that contracted with Dana in October, 2014 to supply it with employees, including plaintiff Boyed. (Doc. 12 at ¶4); *Boyed*, *supra*, 2017 WL 1179058, *1. The parties' contract refers to Dana as the "purchaser" and MRI as the "supplier." (Doc. 13–1 at 1).

Paragraph 9 of the agreement, titled "Dana's Responsibilities," specified that:

> **a. Generally.** Services to be performed by employees provided by Supplier will be performed under the direction, supervision, and control of the Purchaser.
>
> * * *
>
> Purchaser will be responsible for the acts or omissions of Supplier's employees (a) working at premises at which there are no responsible Dana supervisory personnel present; (b) working in situations lacking in appropriate internal controls and safeguards; (c) handling cash, negotiables, valuables, merchandise, credit cards, check writing materials and keys; or (d) on Payroll Service[.]
>
> * * *
>
> **b. Compliance.** In connection with the performance of this Agreement, Dana will comply with all applicable laws, regulations and orders, including, but not limited to, equal opportunity employment laws and regulations and occupational safety and health legislation.
>
> **c. Professional Services.** Dana will control the details of the work and be responsible for the work product of Supplier's employees assigned to perform professional, scientific, engineering, information services, technical, laboratory support, or similar work.

(Doc. 13–1 at 3–4).

The parties also included an indemnification agreement in the contract. The provision obligated MRI to indemnify Dana, but did not place a reciprocal obligation on Dana:

> **Indemnification.** Supplier agrees to defend, indemnify, and hold Dana and all Purchasers and their directors, employees, sub-contractors, agents, successors and assigns harmless from and against (i) any and all liabilities, damages, fines, penalties, costs, claims, demands, and expenses resulting from Supplier's breach of this Agreement including, without limitation, any of Supplier's representations or warranties contained herein; the failure of Supplier or its directors, employees, subcontractors, agents, or assigns to comply with any law, regulation or order which applies to its obligations and performance under this Agreement; (ii) any direct claim for workers' compensation benefits or personal injury claims for job-related bodily injury or death asserted against Dana or its Purchasers by any Supplier employees or, in the event of death, by their personal representatives; and/or (iii) from any negligent or willful act or omission by Supplier or its directors, employees, subcontractors, agents, or assigns in the performance of this Agreement. This provision will survive the expiration or termination of this Agreement.

(*Id.* at 7–8).

### B. Boyed's Allegations

As I explained in my prior order, Boyed was schizophrenic and bi-polar. In May, 2015, he told Donathan about his condition; thereafter, "Donathan's attitude toward plaintiff visibly changed; their relationship, which had been friendly, was no longer so." *Boyed*, *supra*, 2017 WL 1179058, *1.

Donathan denied Boyed's request to attend a medical appointment on June 5. Defendant Bailey, an MRI supervisor who worked at the Dana plant, advised Boyed that he would lose his job if he attended that appointment. When Boyed arrived at work on June 5, Bailey explained that Donathan had decided to fire him for "attitude" and "low productivity." *Id.*

My prior decision disposed of Boyed's claims against Dana and Donathan. It left pending Boyed's claims that MRI and Bailey's own conduct violated Boyed's rights under the FMLA and Ohio's antidiscrimination law.

### C. MRI's Crossclaim

After Boyed filed suit, MRI filed a crossclaim against Dana. (Doc. 12).

At its core, the theory of the crossclaim is that Dana must indemnify MRI in the event that MRI becomes liable to Boyed for violating the FMLA and/or Ohio law. The crossclaim raises eight counts: 1) implied indemnity; 2) comparative indemnity; 3) contribution; 4) breach of contract; 5) contractual indemnification; 6) equitable indemnity; 7) negligence; and 8) respondeat superior. (Doc. 12 at 29–38).

## Standard of Review

A complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## Discussion

### A. Indemnity and Contribution Claims

#### 1. Contractual Indemnity

"Indemnity arises from contract, express or implied, and is the right of a person who has been compelled to pay what another should have paid to require complete reimbursement." *Mahathiraj v. Columbia Gas of Ohio, Inc.*, 84 Ohio App. 3d 554, 563 (1992).

In count V of its crossclaim, MRI alleges that Dana is "contractually obligated to defend, indemnify, and hold harmless, MRI for any allegations set forth" in Boyed's complaint. (Doc. 12 at ¶40).

But MRI points to no language in the contract so obligating Dana. The only indemnification provision in the agreement – ¶19 – requires MRI to indemnify Dana. And while Dana agreed in ¶9(a) of the contract to be responsible for the actions of MRI workers in certain narrowly defined circumstances, this case does not implicate those circumstances.

Accordingly, MRI's contractual-indemnity claim fails to state a plausible claim for relief.

### 2. Implied, Equitable, and Comparative Indemnity

MRI alleges that, to the extent that MRI "is held liable and responsible to Plaintiff for damages," its liability "will be due to the conduct of [Dana], and its agents and employees[.]" (Doc. 12 at ¶26). Because its liability is thus only vicarious, MRI contends that it is entitled to either implied indemnity, equitable indemnity, or comparative indemnity from Dana. (*Id.* at ¶¶27–28, 30–31, 45).

"Ohio law generally recognizes that implied indemnification is appropriate in certain limited circumstances where a party owes only secondary legal responsibilities and is passively negligent." *Mahathiraj*, *supra*, 84 Ohio App. 3d at 593–94.

"Secondary liability generally arises in situations, like vicarious liability, where a relationship exists between the tortfeasors that permits one tortfeasor to be held liable for the consequences of the other's actions. By contrast, a person is primarily liable through active negligence or through actual knowledge of a dangerous situation and acquiescence in the continuance thereof." *Id.* at 594.

5

Here, Boyed has alleged that MRI and Bailey are liable for violating the FMLA and Ohio law based on their own conduct. (Doc. 1 at ¶¶80–83, 85–90, 93, 95, 109–11). He does not contend that MRI is liable only on a secondary or vicarious basis for Dana's and Donathan's conduct.

This, then, is not a case where MRI may be liable to Boyed only because the law deems MRI answerable for Dana's misconduct, and the doctrine of implied indemnification does not apply. *E.g.*, *Mahathiraj*, *supra*, 84 Ohio App. 3d at 94 ("in order to qualify for indemnification, the party claiming the right must be merely passively negligent").

MRI's opposition brief does not provide any arguments in support of its equitable-indemnity or comparative-indemnity claims. But Ohio law appears to treat those theories of liability as synonymous with implied indemnification. *Taylor v. Academy Iron & Metal Co.*, 36 Ohio St. 3d 149, 153 (1988) (discussing equitable indemnity). And as MRI's implied indemnity claim fails as a matter of law, so do its other theories of indemnification.

### 3. Contribution

Count III asserts that MRI has a right of contribution from Dana. (Doc. 12 at ¶33).

"[T]he essential elements for contribution in a tort action are a common liability of joint-tortfeasors to an injured party and payment by one of the tort-feasors of more than his share of that liability." *Nationwide Mut. Ins. Co. v. Marcinko*, 436 N.E.2d 551, 556 (Meigs Cnty., Ohio, Ct. of Common Pleas 1980).

The contribution doctrine is inapplicable in this case, which involves no negligence or tort claims. Moreover, as I have just explained, MRI's liability to Boyed turns on Boyed's allegation that MRI failed to comply with the FMLA and took an adverse employment action against him because

of his actual or perceived disability. There is thus no basis for MRI to claim a right of contribution from Dana, when MRI's liability depends on its own, rather than Dana's, conduct.

## B. Breach of Contract

In count IV of the crossclaim, MRI alleges that Dana breached the parties' contract by failing to "defend [MRI] from the causes of action alleged against MRI by Plaintiff arising out of actions undertaken by DANA employees[.]" (Doc. 12 at ¶35). As already noted, however, there is no language in the contract obligating Dana to indemnify MRI. Accordingly, MRI has not stated a plausible breach-of-contract claim.

## C. Negligence

MRI next alleges that: 1) Dana and Donathan "had a duty to act reasonably with regard to employees assigned" to Dana; 2) Dana and Donathan breached that duty; and 3) the breach proximately caused harm to MRI (in the form of costs MRI incurred to defend against Boyed's claim).

But MRI does not allege that Dana and Donathan owed any duty to it or that Dana and Donathan breached any such duty to MRI. *E.g.*, *Vadaj v. French*, --- N.E.3d ----, 2017 WL 1365464, *2 (Ohio App.) ("In Ohio, duty is the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff.").

Absent such allegations, MRI has not stated a plausible negligence claim.

## D. Respondeat Superior

Finally, in count VIII, MRI alleges that Dana, as Donathan's employer, "is responsible for all of the negligent acts committed by [Donathan] within the scope of his employment." (Doc. 12 at ¶¶52, 54). That being so, MRI alleges that, should it "be ultimately held liable or responsible for

Plaintiff's damages, said liability will be vicarious only and will be the direct and proximate result of the active and affirmative conduct on the part of [Dana], its agents and employees," including Donathan. (*Id.* at ¶55).

This is an implausible respondeat-superior claim for at least three reasons.

First, MRI ignores the fact that Boyed alleges MRI and its employee, Bailey, are liable for violating the FMLA and Ohio's anti-discrimination laws because of their own conduct. (Doc. 1 at ¶¶80–83, 85–90, 93, 95, 109–11). Boyed's claim against MRI is not, in other words, simply derivative from Dana and Donathan's own alleged wrongdoing.

Second, Boyed did not bring a negligence claim against Donathan. Accordingly, whether Dana is vicariously liable for any such negligence is not an issue in this case. *Cf. Buchanan v. Marler*, 2017-Ohio-1438, ¶38 (Ohio App.) ("Under the doctrine of respondeat superior, an employer is vicariously liable for the torts of its employees.").

Third, even if Dana were vicariously liable for Donathan's wrongdoing, that would not mean Dana were somehow liable to MRI. As already discussed, MRI's claims that Dana has a duty to indemnify MRI for MRI's own, independent wrongdoing are implausible and fail as a matter of law.

**Conclusion**

It is, therefore,

ORDERED THAT Dana and Donathan's motion to dismiss (Doc. 21) be, and the same hereby is, granted with prejudice.

So ordered.

/s/ James G. Carr<br>Sr. U.S. District Judge